Chester Van Tongeren v. Commissioner.
Van Tongeren v. Commissioner
Docket No. 2699.
United States Tax Court
1945 Tax Ct. Memo LEXIS 250; 4 T.C.M. (CCH) 353; T.C.M. (RIA) 45114; March 31, 1945
*250 Samuel R. Rosenthal, Esq., 77 W. Washington St., Chicago, Ill., for the petitioner. Charles Munz, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioner's individual income taxes for the calendar years 1939, 1940 and 1941, in the amounts of $8,123.03, $9,809.90 and $8,887.80, respectively, resulting from the inclusion in his taxable income for those years of the entire amount of income resulting from the operation of a business which petitioner contends is carried on by a partnership composed of himself and his wife. Findings of Fact Petitioner and his wife, Mae, who are residents of Holland, Michigan, filed their separate income tax returns for the calendar years 1939, 1940 and 1941, with the collector of internal revenue for the district of Michigan. The Dutch Novelty Shops filed partnership returns for the tax years, in which the partnership profits were shown as belonging in equal shares to Chester and Mae Van Tongeren, each of whom was entitled to the following amounts: 1939, $29,793.32; 1941, $25,072.86 (87); and 1941, $19,231.56. Their individual returns reflected the receipt by *251 them of these amounts. Petitioner and his wife were married in 1922. Before that time, Mrs. Van Tongeren had been employed by The Western Union Telegraph Co. in Chicago, and she had accumulated a modest amount of savings. Mr. Van Tongeren worked as a clerk in his father's cigar and sporting goods store in Holland, Michigan. This store was sold about 1927, and at about the same time, petitioner heard of a small business, conducted as an avocation by a sign-painter in Holland, which was for sale. It consisted of the manufacture and sale of miniature wooden shoes for the gift and novelty shop trade in Holland. Petitioner's wife was convinced that this was their opportunity to acquire a business of their own in fulfillment of a long-cherished ambition. They bought the business for $175, all of which was furnished by Mrs. Van Tongeren from her savings. Later on, she contributed about $125 more for the purchase of materials to meet the requirements of the business. Mr. Van Tongeren had no capital, and contributed none. Thereafter, the earnings of the business furnished additional capital, and later on occasional bank loans were negotiated whenever working capital was needed. Both Mr. *252 and Mrs. Van Tongeren signed the notes for these loans. The business was originally carried on in the home of petitioner and his wife. The services of both were employed from the beginning. Mrs. Van Tongeren paired and tied the little wooden shoes together with ribbons, and petitioner burned on the designs, which she painted in color. Selling and delivering was done by both. The business was profitable, and they gradually branched out into the production of other novelty items. The great majority of these items were either originated by Mrs. Van Tongeren or adapted and developed by her from more expensive items for use in the novelty field. They included small windmills, a small pipe in the shape of a wooden shoe, wooden candles, a miniature Cape Cape Code type cradle, a small wooden traveling case souvenir, the racks, letter holders, trays, door knockers, and a great variety of such items. They were sold principally to chain stores such as Woolworth, Kresge, Murphy, Grant and Newberry, and, in order to satisfy their demands, and maintain their position of leadership in a highly competitive field, it was necessary to produce ten to fifteen new items each year. The development of *253 new ideas was Mrs. Van Tongeren's particular specialty, and she frequently visited trade and gift shows, and gift shops in New York, Chicago, and other cities looking for ideas. These were fruitful sources of inspiration, but some of her ideas were wholly original. One of these, the "Leavea-Note," a small wooden cabinet containing a note pad and a pencil, designed to hang near the front door of private residences, for the convenience of callers during the absence of the family, was an outgrowth of a personal experience of Mrs. Van Tongeren's which suggested the need for such an invention. This has proved to be the most successful item which they have produced. Hundreds of thousands have been sold, and they have been unable to supply the demand. Some of the unfilled orders on hand at the time of the hearing were about a year old. As the business expanded, it became necessary to secure larger quarters than their home afforded. They moved into three successively larger buildings within the period of a few years, and finally, prior to the tax years involved here, Mr. and Mrs. Van Tongeren jointly bought the factory building in which the business has since been conducted. During all the *254 tax years, the business has employed from 65 to 80 people and the amount of the invested capital, in 1938 and 1939, was about fifty thousand dollars. A retail store under Mrs. Van Tongeren's active supervision was added to their activities. Both Mr. and Mrs. Van Tongeren devoted their full time to the business in its earlier years. Mrs. Van Tongeren did her own housework, but they frequently worked until late at night, and on Sundays and holidays, filling orders. By 1936, they had developed a seasoned organization of experienced personnel who could handle the routine work of ordering materials and manufacturing, shipping, and invoicing, so that the Van Tongerens were no longer required to give these phases of the work their close personal supervision. They did continue, however, to manage and formulate the policies of the business, develop new items, and generally to exercise executive supervision and control over the business. Early in 1940, Mr. Van Tongeren became seriously ill with a heart disease, as a result of which he was confined to his bed for many months, during which time his condition required absolute quiet and rest. He was incapacitated during all of 1940, and until *255 October of 1941. He was not advised or consulted concerning the business and during that entire time Mrs. Van Tongeren managed the business without his assistance. She was in constant touch with the office by telephone, and frequently attended to business in the office in person; she conducted all the business with the bank and the accountants; and continued to carry on not only the share of the work which she had always done, but assumed the executive duties which formerly were the responsibility of Mr. Van Tongeren. During all the years involved here, both Mr. and Mrs. Van Tongeren had and exercised access to the company's bank account, withdrawing whatever funds they needed without consulting each other or anyone. The withdrawals were charged to their accounts on the books of the partnership. Mrs. Van Tongeren invested some of her withdrawals in real estate in her own name, and sometimes they bought real estate jointly. In 1937, Mr. Van Tongeren became worried about the condition of his health, and the legal status of the business in case of his death. They had both always understood that they were in business together, and that Mrs. Van Tongeren owned half the business. They *256 had so advised their banker, their accountant, and their key office worker, and anyone else who inquired. He consulted an attorney with the purpose of having papers drawn up which would confirm his wife's ownership of one-half of the business and protect her interest in the event of his death. Later on, when he consulted an accountant, he was advised that the documents which his attorney had prepared might not affect the desired result, and he consulted another lawyer, in 1938, who advised the execution by him of an instrument of gift, and by both of them of a business agreement, which was done. The lawyer advised him that the execution of the gift instrument and the business agreement would make secure his wife's right to a one-half interest in the business, and serve the same general purpose as a partnership agreement. The business agreement executed may be briefly described as providing that Mr. and Mrs. Van Tongeren each owned an undivided one-half interest in the property used in the business, that they desired to contribute their respective interests and services for the joint conduct of the business, that they were to be jointly and severally liable for all obligations of *257 the business, that each should receive 50 percent of the net profits, that the contract should continue until death of one party or dissolution by mutual consent, in either of such events, each party or his estate should be entitled to one-half of all the assets of the business. They were then advised that it might be well to file a gift tax return and pay a gift tax, which were done. Up to 1940, the books of the business were simply records of receipts and disbursements, which were by then inadequate for the needs of the business. In 1940, the accountant which had been consulted set up complete partnership books, including drawing accounts for Mr. and Mrs. Van Tongeren. In 1929, when it was decided to conduct the business under the trade name of the Dutch Novelty Shop, Mr. Van Tongeren filed the statement required by state law as a prerequisite to doing business under a trade name, in which he described himself as the owner of the Dutch Novelty Shop. He prepared the statement casually, without giving the matter much thought. Mrs. Van Tongeren has been the owner of one-half of the business described herein since its inception. Opinion KERN, Judge: There is only one question *258 involved in this case, and it is whether, for Federal income tax purposes, Mrs. Van Tongeren is a bona fide partner in the business conducted by her husband and herself. If so, the respondent erred in including in petitioner's taxable income that share of the partnership profits belonging to her. The evidence is convincing that Mrs. Van Tongeren contributed, from her savings acquired prior to her marriage, all the original capital with which the business was acquired. She has devoted her services with uncommon energy and skill to the successful development and [*] of the business since its earliest days. She was aptly described by one witness as the "spark plug" of the organization. She ran the business, unaided by the petitioner during his long illness, which extended through nearly two of the three tax years involved here. She had access to and actually did withdraw such amounts from the business as she deemed advisable, without restriction from her husband, and invested or spent them in accordance with her own judgment, without the necessity of accounting to him. Whether there is a valid partnership, for income tax purposes, depends in any case upon its particular facts. *259 We have regarded as valid partnership between husband and wife where the wife owns part of the capital, if the business is one in which capital is a material income producing factor, ; ; and where both husband and wife perform services, ; ; . Here it is established beyond doubt that the wife furnished all the original capital, and performed services of so valuable a character as to be virtually indispensable to the business. The conclusion that a valid bona fide partnership existed between the Van Tongerens is irresistible. We conclude that respondent erred in taxing the share of the partnership earnings which belonged to Mrs. Van Tongeren to petitioner. Decision will be entered for the petitioner.